UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

MICHAEL JAMES FISHER,

                Plaintiff,                Case No. 1:22-cv-671

v.                                  Honorable Ray Kent

R. REWERTS et al.,

                Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought and was granted leave to proceed *in forma pauperis*. (ECF No. 5.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.13.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v.*

*Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Rewerts, Nevins, Wireman, Garrod, Morris, Kurtz, Mclanowski, Russell, and Freed. The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: (1) Plaintiff's Eighth Amendment claim against Defendants Nesbitt and Olson premised upon the denial of his request to speak to his mental health counselor; and (2) Plaintiff's claims premised upon violations of MDOC policy and procedure. Plaintiff's Eighth Amendment excessive force claims against Defendants Nesbitt, Enbody, Kohl, and Olson remain in the case.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. Feb. 10, 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

## Discussion

### I.     Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues MDOC Grievance Manager Richard D. Russell, as well as the following DRF personnel: Warden R. Rewerts; Assistant Deputy Warden K. Nevins; Lieutenants Unknown Wireman and Unknown Morris; Sergeant Unknown Garrod; Hearing Investigator Unknown Kurtz; Corrections Officers Unknown Nesbitt, Unknown Enbody, Unknown Kohl, Unknown Freed, and Unknown Olson; and Registered Nurse Unknown Mclanowski.

Plaintiff alleges that on February 10, 2022, he asked Defendants Nesbitt and Olson if he could speak to his mental health counselor. (ECF No. 1, PageID.5.) They told him no because it was the end of the shift and to "do that s*** on 2nd shift." (*Id.*) Plaintiff responded that he wanted to be placed on observation because he was feeling suicidal. (*Id.*) Defendants Nesbitt and Olson told him to go sit in the dayroom. (*Id.*) Plaintiff walked to the dayroom, picked up the microwave, and told Defendants Nesbitt and Olson that he would break the television if they did not call mental health. (*Id.*) Defendants responded, "Go ahead." (*Id.*) Plaintiff threw the microwave into the television "in an effort [to] seek mental health." (*Id.*)

Defendant Olson locked the doors to the dayroom. (*Id.*) While he did so, a laundry porter asked if Defendant Olson wanted him to "beat [Plaintiff's] ass." (*Id.*) Defendant Olson told him to wait until 2nd shift. (*Id.*) "Out of anger," Plaintiff picked up a milk crate, stood on a table, and smashed a sprinkler head, causing an alarm to sound and water to spray everywhere. (*Id.*) Defendants Nesbitt and Olson yelled "get on the ground," and several other officers were present. (*Id.*)

Plaintiff jumped down from the table and placed his hands behind his back. (*Id.*) Defendants Olson, Nesbitt, Enbody, and Kohl proceeded to "intentionally slam [Plaintiff's] face on the floor multiple times." (*Id.*, PageID.5–6.) Plaintiff kept stating that he "was done" and tried to protect his face and head. (*Id.*, PageID.6.) Officers told him to stop resisting, and Plaintiff responded, "Okay, okay, I don't want to die." (*Id.*) One of the officers then used a taser on Plaintiff "for several moments in water," while the others continued to strike Plaintiff "repeatedly." (*Id.*) Plaintiff contends that he was cuffed and that the cuffs were "extra tight." (*Id.*) He was "dragged out in cuffs [and] put in a restraint chair." (*Id.*)

Plaintiff was then taken to the medical unit. (*Id.*) Defendant Mclanowski and another nurse (not a party) asked Plaintiff questions while Lieutenant Cook (not a party) stood behind the restraint chair. (*Id.*, PageID.7.) The nurses asked if he could loosen the restraints, and he did so. (*Id.*) Plaintiff was "semi-delirious" at the time and received "several stitches to [his] forehead." (*Id.*) The unknown nurse asked Cook to loosen the restraints because they were still too tight. (*Id.*) Cook undid the cuffs and placed Plaintiff's hands in the restraints on the arms of the chair. (*Id.*) However, he made the restraints too tight. (*Id.*) Plaintiff told the nurses that there was a barb from the taser embedded in his buttocks. (*Id.*) The nurses checked for barbs but were unable to find it because Plaintiff was in the chair. (*Id.*, PageID.8.) A critical report was prepared by the nurses and officers involved. (*Id.*)

Plaintiff was then wheeled to segregation "without [the] restraints being check[ed] after being tightened again." (*Id.*) Plaintiff told Cook about the restraints several times; Cook responded, "Shut up Fisher." (*Id.*) Plaintiff was placed in the shower in segregation while still in the restraint chair. (*Id.*) He passed out only to be awakened so that he could be placed in cell 15. (*Id.*) During the strip search, it was discovered that the barb from the taser was embedded in his buttocks from

sitting in the chair for hours. (*Id.*) Plaintiff pulled it out and asked Defendant Morris to document it. (*Id.*) Defendant Morris did so and took the barb. (*Id.*)

Defendant Mclanowski brought Plaintiff his night medication and he told her that he was dizzy and experiencing blurry vision. (*Id.*) She told Plaintiff to get some sleep. (*Id.*) Over the next several days, Plaintiff told the nurses who brought him his medication that he was having headaches. (*Id.*) He was "ignored or told to fill out medical kite[s] which [he] did." (*Id.*, PageID.9.) Plaintiff's mental health counselor came to see him and told Plaintiff to have the officers call her if "something like this happens again." (*Id.*) She scheduled an appointment with the psychiatrist for Plaintiff. (*Id.*)

Plaintiff goes on to allege that he was not present for the misconduct hearing held by ALJ Hawkins (not a party) on February 15, 2022. (*Id.*) Defendant Kurtz and Hearing Investigator Smith (not a party) signed the incident report. (*Id.*) Plaintiff contends that he was not given a copy of the hearing report until February 18, 2022. (*Id.*) Prior to this, Plaintiff had filed a grievance concerning the excessive use of force. (*Id.*) He requested a rehearing on March 1, 2022. (*Id.*) On May 13, 2022, Defendant Russell denied the request. (*Id.*, PageID.10.) Plaintiff alleges that he is hard of hearing and never spoke to Defendant Kurtz and Hearing Investigator Smith as alleged in the hearing report. (*Id.*)

Plaintiff states that his grievance was reviewed by Defendant Garrod, who interviewed Plaintiff in front of the entire unit instead of in an office." (*Id.*) Defendant Wireman also "signed and dated" the grievance. (*Id.*) Defendant Garrod asked Plaintiff what happened, and when Plaintiff told him, he responded, "oh we couldn't see because of all the water." (*Id.*) Despite this, ALJ Hawkins noted in the hearing report that Plaintiff "could be seen in video turning [his] head." (*Id.*) Plaintiff appealed the denial of his grievance. (*Id.*) He avers that his Step II appeal was not

dated as received by Defendant Rewerts, but that Defendant Rewerts denied the appeal on April 5, 2022. (*Id.*, PageID.11.) Plaintiff's Step III appeal was denied by Defendant Russell. (*Id.*)

Plaintiff argues that the incident was not properly investigated. (*Id.*) He states that when Defendant Nesbitt was interviewed by Defendant Garrod, Nesbit stated that Plaintiff was "placed" on the ground and that at no time was Plaintiff's head "smashed" into the ground. (*Id.*) Plaintiff argues that officers breached protocol and that the incident "could have been de-escalated." (*Id.*, PageID.12.) Plaintiff argues that he is a non-violent offender who was "in a cell with a man sentenced to 50 years." (*Id.*) He "went to the extreme so [he] wouldn't be raped or hurt." (*Id.*) Plaintiff appears to suggest that he should not have been a cell with inmate Kenneth Taylor because Taylor was assigned a much higher security level. (*Id.*)

Based on the foregoing, the Court construes Plaintiff's complaint to assert violations of his Eighth and Fourteenth Amendment rights, as well as claims concerning administration of the grievance procedure. Plaintiff asks the Court to subpoena video footage from the date of the incident. (*Id.*, PageID.13.) He also requests $100,000.00 in damages, as well as an additional $10,000.00 from each corrections officer involved. (*Id.*) Plaintiff asks for injunctive relief in the form of an order requiring all officers to wear body cameras. (*Id.*) He also requests a transfer to a safer prison. (*Id.*) Plaintiff further seeks suspension of all officers involved without pay. (*Id.*, PageID.14.) He also wants the Court to order the MDOC to "make a log of O.C. pepper gas to weigh their cans before and after each use," and a log of taser use as well. (*Id.*)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more

than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Claims Against Defendants Nevins and Freed

Plaintiff names Assistant Deputy Warden Nevins and Corrections Officer Freed as Defendants; however, Plaintiff fails to name these Defendants in the body of his complaint. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See*

*Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). Here, Plaintiff's claims fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). For that reason alone, Plaintiff's claims against Defendants Nevins and Freed will be dismissed.

### B.      Claims Against Defendants Rewerts, Wireman, Garrod, and Russell

Plaintiff sues Defendants Rewerts, Wireman, Garrod, and Russell in connection with his grievances and their responses, or lack thereof, thereto. Plaintiff, however, has no due process right to file a grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23

9

F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at \*1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

Moreover, Defendants' failure to process or act on Plaintiff's grievances did not violate his right to petition the government. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Furthermore, Defendants' actions have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his pro se invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied

10

access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

Moreover, to the extent Plaintiff intended to hold Defendants Rewerts, Wireman, Garrod, and Russell liable for the actions of their subordinates, government officials, such as Defendants, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Rewerts, Wireman, Garrod, and Russell engaged in any active unconstitutional behavior. For all the foregoing reasons, Plaintiff fails to state a claim against Defendants Rewerts, Wireman, Garrod, and Russell.

### C.    Claims Against Defendant Morris

Plaintiff's sole allegation concerning Defendant Morris is that when he pulled the barb out of his buttocks after being placed in segregation, Defendant Morris took the barb when Plaintiff asked him to document it. (ECF No. 1, PageID.8.) Plaintiff's assertion, however, is simply insufficient to permit the Court to infer that Defendant Morris engaged in any active

unconstitutional behavior leading to the violation of Plaintiff's rights. *See Grinter*, 532 F.3d at 575–76. As noted *supra*, to the extent Plaintiff seeks to hold Defendant Morris liable for the unconstitutional conduct of his subordinates, he cannot do so. *See Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson*, 556 F.3d at 495. Plaintiff's claims against Defendant Morris will, therefore, be dismissed.

### D.      Eighth Amendment Claims

#### 1.      Excessive Force

Plaintiff contends that Defendants Nesbitt, Enbody, Kohl, and Olson violated his Eighth Amendment rights by using excessive force against him on February 10, 2022. The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous", nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "'involve the unnecessary and wanton infliction of pain.'" *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.*

But not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (holding that "[n]ot every push or shove . . . violates a prisoner's constitutional rights") (internal quotations omitted). On occasion, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)), *quoted in Cordell v. McKinney*, 759 F.3d 573, 580–81 (6th Cir. 2014). Prison

officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to an Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. We ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9 (internal quotations omitted). The objective component requires a "contextual" investigation, one that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

Here, Plaintiff contends that after striking the sprinkler head with a milk crate he had jumped off the table and was complying with orders when Defendants Olson, Nesbitt, Enbody, and Kohl slammed his face on the floor multiple times. (ECF No. 1, PageID.5–6.) They also pulled

his arms "trying to hurt" him. (*Id.*, PageID.6.) One of the officers used a taser "for several moments in water," and they repeatedly struck Plaintiff with their hands and knees. (*Id.*) They also applied the restraints "extra tight." (*Id.*) Given these allegations, the Court concludes that Plaintiff has alleged plausible Eighth Amendment excessive force claims against Defendants Olson, Nesbitt, Enbody, and Kohl.

### 2. Medical Care

Plaintiff also appears to suggest that Defendants Nesbitt and Olson violated his Eighth Amendment rights by denying his request to speak to his mental health counselor. (ECF No. 1, PageID.5.) He also vaguely suggests that Defendant Mclanowski violated his Eighth Amendment rights by not providing adequate medical care after the use of force incident.

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective

14

component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a]

plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison

official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*,

894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

However, not every claim by a prisoner that he has received inadequate medical treatment

states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court

explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to
> constitute an unnecessary and wanton infliction of pain or to be repugnant to the
> conscience of mankind. Thus, a complaint that a physician has been negligent in
> diagnosing or treating a medical condition does not state a valid claim of medical
> mistreatment under the Eighth Amendment. Medical malpractice does not become
> a constitutional violation merely because the victim is a prisoner. In order to state
> a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to
> evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison

medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state

a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v.*

*Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605

(2014). This is so even if the misdiagnosis results in an inadequate course of treatment and

considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2

(6th Cir. Apr. 4, 1997).

With respect to Plaintiff's claim that Defendants Nesbitt and Olson denied his request to

speak to his mental health counselor, the Eighth Amendment requires prison officials to provide

medically necessary mental health treatment to prisoners. *See Estelle*, 429 U.S. at 103; *Government*

*of the Virgin Islands v. Martinez*, 239 F.3d 293, 301 (3d Cir. 2001); *Lay v. Norris*, No. 88-5757,

1989 WL 62498, at *4 (6th Cir. June 13, 1989); *Potter v. Davis*, No. 82-5783, 1985 WL 13129, at

* 2 (6th Cir. April 26, 1985). However, Plaintiff fails to allege facts suggesting that Defendants

Nesbitt and Olson were aware that Plaintiff needed mental health treatment and deliberately denied those requests. Simply asking to see a mental health professional and being denied is insufficient to maintain an Eighth Amendment claim. Plaintiff's claim, therefore, is entirely conclusory. . . . . . . Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Accordingly, because Plaintiff fails to allege specific facts showing that Defendants Nesbitt and Olson were deliberately indifferent to his mental health needs, this Eighth Amendment claim will be dismissed.

With respect to Plaintiff's claim against Defendant Mclanowski, his own complaint avers that she provided medical care to him after the incident. Plaintiff avers that he received stitches and that both Defendant Mclanowski and the unknown nurse searched for the taser barb, albeit unsuccessfully. (ECF No. 1, PageID.7–8.) Defendant Mclanowski later brought Plaintiff his night medications. (*Id.*, PageID.8.) When Plaintiff told her that he felt dizzy and had blurry vision, she responded that he should "get some sleep." (*Id.*) Plaintiff's complaint is devoid of facts suggesting that he continued to suffer from these symptoms. Moreover, while he alleges that his requests for medical care for headaches were ignored over the "next several days," his vague reference to "the nurses" does not permit the Court to infer that Defendant Mclanowski was one of the nurses who ignored his requests. Plaintiff's claim amounts to no more than a disagreement with the care provided, which is insufficient to maintain an Eighth Amendment deliberate indifference claim premised upon inadequate medical care. Plaintiff's Eighth Amendment claim against Defendant Mclanowski will, therefore, be dismissed.

### E.    Fourteenth Amendment Due Process Claims

Plaintiff appears to suggest that his Fourteenth Amendment due process rights were violated in connection with misconduct proceedings. He avers that he was not present at his hearing

and that Defendant Kurtz alleged that he had spoken with Plaintiff about the incident, which was not true. (ECF No. 1, PageID.10.)

A prisoner's ability to challenge a prison misconduct conviction depends on whether the conviction implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).

Plaintiff provides no information whatsoever about the misconduct he received. Under MDOC Policy Directive 03.03.105, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. *See* MDOC Policy Directive 03.03.105 ¶ C (eff. Apr. 18, 2022). Minor misconducts are ones for which inmates cannot be denied good time or disciplinary credits. *See id.*, ¶¶ C, DDDD, EEEE, Attach. D. The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g.*, *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003). Thus, if Plaintiff were convicted of a Class II or III misconduct, he cannot maintain a due process claim based upon such misconduct proceedings.

Even if Plaintiff was convicted of a Class I misconduct, he fails to state a due process claim. Plaintiff has not alleged a deprivation that will inevitably affect the duration of his sentence. A prisoner like Plaintiff, who is serving an indeterminate sentence for an offense committed after 2000, can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp.

18

Laws § 800.34; *see also* Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=669166 (last visited Aug. 2, 2022). Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011). Moreover, Plaintiff fails to show that any sanction he received was an "atypical" and "significant deprivation" because he does not include any allegations regarding the sanctions that he received. *Sandin*, 515 U.S. at 484.

Further, to the extent Plaintiff was placed in segregation as a result of the misconduct, his placement therein does not constitute an "atypical" and "significant deprivation." *Id.* In *Sandin*, the United States Supreme Court concluded that placement in segregation for 30 days did not impose an atypical and significant hardship. *Id.* Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days in segregation is not atypical and significant). Instead, generally only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (concluding that thirteen years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (finding that eight years of segregation implicates a liberty interest); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicated a liberty interest). Plaintiff does not allege that he was placed in segregation for any extended period.

For all the foregoing reasons, Plaintiff fails to state a Fourteenth Amendment due process claim against Defendant Kurtz. His due process claims will, therefore, be dismissed.

**F.    Violations of MDOC Policy and Procedure**

Plaintiff vaguely suggests that various Defendants failed to follow MDOC policy and procedures. However, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of state law or policy. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994); *see also Laney v. Farley*, 501 F.3d 577, 580–81 & n.2 (6th Cir. 2007). The only way a policy might enjoy constitutional protection would be through the Due Process Clause of the Fourteenth Amendment.

To demonstrate a violation of procedural due process, a plaintiff must prove the following elements: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts, however, have routinely recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney*, 501 U.S. at 581 n.2; *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164. Accordingly, Plaintiff's allegations that Defendants violated MDOC policy and procedure fail to raise a cognizable federal constitutional claim.[2]

---

[2] To the extent Plaintiff intended to raise substantive due process claims regarding the misconduct, he fails to state such a claim. "Substantive due process 'prevents the government from engaging

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Rewerts, Nevins, Wireman, Garrod, Morris, Kurtz, Mclanowski, Russell, and Freed will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: (1) Plaintiff's Eighth Amendment claim against Defendants Nesbitt and Olson premised upon the denial of his request to speak to his mental health counselor; and (2) Plaintiff's claims premised upon violations of MDOC policy and procedure. Plaintiff's Eighth Amendment excessive force claims against Defendants Nesbitt, Enbody, Kohl, and Olson remain in the case.

An order consistent with this opinion will be entered.


Dated:   August 23, 2022                              /s/ Ray Kent
                                                      Ray Kent
                                                      United States Magistrate Judge

---

in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

"Where a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the Fourteenth Amendment Procedural Due Process Clause applies to protect Plaintiff's liberty interest in the misconduct proceedings. Consequently, any intended substantive due process claim will be dismissed.